STATE OF NORTH CAROLINA v. BOBBY JOE REID, JR.

No. COA01-957

(Filed 16 July 2002)

1. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon, because: (1) the State presented sufficient evidence that defendant perpetrated the robbery under the doctrine of recent possession; and (2) although the State failed to present evidence of the exact weapon used to hit the victim during the robbery, the evidence was sufficient to establish that the object was a dangerous weapon where the object exerted such force that it drove the victim's top teeth through her lower lip requiring twenty-five stitches and caused several other teeth to loosen, and the victim's knees buckled and she fell to the ground where she lay dazed for an unknown amount of time.

2. Credit Card Crimes— financial transaction card theft—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of financial transaction card theft, because the State presented sufficient evidence under the doctrine of recent possession that defendant stole the victim's purse which contained her financial transaction cards.

3. Constitutional Law— double jeopardy—financial transaction card theft—robbery with a dangerous weapon

A defendant's conviction for financial transaction card theft was not required to be vacated on double jeopardy grounds even though defendant contends he was subject to multiple punishment for the same act when he was also convicted for robbery

with a dangerous weapon, because: (1) financial transaction card theft requires proof that the perpetrator obtain the financial card with the intent to then use the card, which is not an element of robbery with a dangerous weapon; and (2) robbery with a dangerous weapon requires that the perpetrator possess a dangerous weapon during the commission of a robbery, which is not an element of financial transaction card theft.

**4. Constitutional Law— right to self-representation—statutory requirements for waiver of counsel**

Defendant is not entitled to a new trial in a robbery with a dangerous weapon, financial transaction card theft, and financial transaction card fraud case even though defendant contends the trial court unconstitutionally denied his request to represent himself, because the statutory requirements for waiver of counsel under N.C.G.S. § 15A-1242 for a clear, unequivocal, knowing, voluntary, and intelligent waiver were not sufficiently established.

**5. Criminal Law— defendant's removal from courtroom during closing arguments—harmless error**

Defendant is not entitled to a new trial in a robbery with a dangerous weapon, financial transaction card theft, and financial transaction card fraud case even though the trial court removed defendant from the courtroom during closing arguments, because: (1) defendant waived his right to be present and the trial court complied with the requirements under N.C.G.S. § 15A-1032; and (2) defendant has not established that his removal from the courtroom, if error, affected the outcome of the trial.

Appeal by defendant from judgment entered 7 February 2001 by Judge Russell G. Walker, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 15 May 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Grady L. Balentine, Jr., for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

HUNTER, Judge.

Bobby Joe Reid, Jr. ("defendant") appeals convictions of robbery with a dangerous weapon, financial transaction card theft, and financial transaction card fraud. We find no error.

The State's evidence tended to show that on 27 June 2000 at approximately 7:15 p.m., Elizabeth Stanaland was placing her purse and some prescriptions she had just purchased in the back seat of her car in a CVS Pharmacy parking lot. As Stanaland was placing the items in her car, someone came up behind her and struck her in the face with an object. Stanaland was hit so hard with the object that her knees buckled and she fell to the ground. The assailant then began pulling at her purse strap, which was still around her arm, consequently dragging Stanaland across the ground. The assailant was able to take her purse. Stanaland lay "dazed" in the parking lot for a few moments before being able to return to the pharmacy for help.

Stanaland testified that, although she was not able to see what the assailant used to hit her, she did not believe it was his hand. She testified that the object had a smooth surface, but that it was "firm" and "rigid enough to have . . . exerted some force." The force of the object loosened several of Stanaland's teeth and drove her upper teeth through her lower lip, requiring twenty-five stitches.

On the afternoon of 28 June 2000, the day following the robbery, defendant entered a department store and attempted to buy several hundred dollars' worth of clothes using Stanaland's credit card. The store's employees notified police, and defendant was apprehended. Defendant was carrying a briefcase on his person that contained the contents of Stanaland's stolen purse, including her wallet, checkbooks, prescription glasses, medicine, business cards, soap dispenser, and hair accessories. Stanaland identified all of the items found in defendant's briefcase, as well as the credit card defendant attempted to use, as the items stolen from her the previous evening.

On 7 February 2001, a jury convicted defendant of felonious financial transaction card theft, non-felonious financial transaction card fraud, and robbery with a dangerous weapon. The trial court consolidated the convictions, and sentenced defendant to a single term of 117 to 150 months' imprisonment. Defendant appeals.

Defendant makes five arguments on appeal: (1) the evidence was insufficient to support his conviction for robbery with a dangerous weapon; (2) the evidence was insufficient to support his conviction for financial transaction card theft; (3) the conviction for financial transaction card theft must be vacated to protect defendant from double jeopardy; (4) the trial court unconstitutionally prevented defendant from representing himself; and (5) the trial court unconsti-

tutionally removed defendant from the courtroom during clos-
ing arguments. For reasons discussed herein, we hold that the
trial court did not commit prejudicial error, and defendant received
a fair trial.

**[1]** Defendant first argues that the trial court erred in denying his
motion to dismiss the charge of robbery with a dangerous weapon for
insufficient evidence that defendant perpetrated the crime and that
he did so using a dangerous weapon. We disagree. In ruling upon a
motion to dismiss, the trial court must determine if the State has
presented substantial evidence of each essential element of the
offense. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255
(2002). " 'Evidence is substantial if it is relevant and adequate to con-
vince a reasonable mind to accept a conclusion.' " *Id.* at 336, 561
S.E.2d at 255 (citation omitted). In considering the motion, the trial
court must view the evidence in the light most favorable to the State,
giving the State the benefit of every reasonable inference to be drawn
from the evidence, and resolving any contradictions in favor of the
State. *Id.* at 336, 561 S.E.2d at 256.

In the present case, the State presented sufficient evidence that
defendant perpetrated the robbery under the doctrine of recent pos-
session. This doctrine allows the jury to infer that the possessor of
the stolen property is guilty of its taking. *State v. Pickard*, 143 N.C.
App. 485, 487, 547 S.E.2d 102, 104, *disc. review denied*, 354 N.C. 73,
553 S.E.2d 210 (2001). The doctrine of recent possession applies
where the State can prove three things: (1) that the property was
stolen; (2) that the defendant had possession of this stolen prop-
erty, possession being that " 'he is aware of its presence and has,
either by himself or together with others, both the power and intent
to control its disposition or use' "; and (3) " 'that the defendant had
possession of this property so soon after it was stolen and under such
circumstances as to make it unlikely that he obtained possession hon-
estly.' " *Id.* at 487-88, 547 S.E.2d at 104 (citation omitted).

Here, the State presented evidence that the contents of
Stanaland's purse were stolen, and that the entire contents of the
purse were recovered from defendant's possession upon his attempt
to make a substantial purchase using Stanaland's credit card less than
twenty-four hours after the robbery. The stolen goods were located in
a briefcase that defendant carried on his person, thereby allowing the
inference that defendant was aware that he possessed the stolen
goods, and had both the power and intent to control them. Taking this
evidence in the light most favorable to the State, there was sufficient

evidence establishing defendant's identity as the perpetrator to allow for the jury to consider the evidence.

Likewise, the State presented sufficient evidence that defendant used a dangerous weapon to perpetrate the robbery. Whether an instrument constitutes a dangerous weapon depends upon the nature of the instrument and the manner in which it was used, *State v. Peacock*, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985), as well as the extent of the victim's injuries, *State v. Greene*, 67 N.C. App. 703, 706, 314 S.E.2d 262, 264, *appeal dismissed and disc. review denied*, 311 N.C. 405, 319 S.E.2d 276 (1984). In *State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981), our Supreme Court observed that "[n]o item, no matter how small or commonplace, can be safely disregarded for its capacity to cause serious bodily injury or death when it is wielded with the requisite evil intent and force." *Id.* at 301 n.2, 283 S.E.2d at 725 n.2 (citing various cases in which such common place items as brooms, nail clippers, baseball bats, plastic bags, soda bottles, and rocks have been held to constitute deadly weapons).

In *Greene*, we held that although the State failed to present evidence of the exact weapon used to hit the victim on the back of the head during a robbery, the evidence was sufficient to establish that the object was a dangerous weapon where the blow stunned the victim, knocking him to the ground, and caused a hematoma and laceration on the victim's head requiring four to five stitches. *Greene*, 67 N.C. App. at 706, 314 S.E.2d at 264. Similarly, in *Peacock*, we held that a glass vase used to strike the victim's head constituted a dangerous weapon where the blow inflicted lacerations on the victim and was sufficient to render her unconscious. *Peacock*, 313 N.C. at 563, 330 S.E.2d at 196.

In this case, Stanaland testified that she was hit with a firm, rigid object that she did not believe to be a hand. The object exerted such force that it drove Stanaland's top teeth through her lower lip, requiring twenty-five stitches, and caused several other teeth to loosen. When hit with the object, Stanaland's knees buckled and she fell to the ground where she lay dazed for an unknown amount of time. Taken in the light most favorable to the State, the evidence was sufficient to allow the jury to consider whether defendant perpetrated the crime using a dangerous weapon. The trial court did not err in denying defendant's motion to dismiss.

[2] We also reject defendant's second argument, that the evidence was insufficient to support his conviction for financial transaction

card theft. Defendant argues that the evidence was insufficient to establish that he was the perpetrator of the theft; however, as discussed above, the State presented sufficient evidence under the doctrine of recent possession that defendant stole Stanaland's purse, which contained her financial transaction cards. This argument is overruled.

[3] In his third argument, defendant maintains that his conviction for financial transaction card theft must be vacated because that conviction, along with his conviction for robbery with a dangerous weapon, constitutes multiple punishment for the same act in violation of the Fifth Amendment prohibition against double jeopardy. Again we disagree.

This Court has recently summarized the appropriate analysis to use in considering a defendant's claim that he has been subject to multiple punishments for essentially the same offense. *See State v. Haynesworth*, 146 N.C. App. 523, 553 S.E.2d 103 (2001). We stated the general rule that "[w]hen the same act or transaction constitutes a violation of two criminal statutes, the test to determine whether there are two separate offenses [for purposes of double jeopardy] is whether each statute requires proof of a fact which the other does not." *Id.* at 530-31, 553 S.E.2d at 109 (citing *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932)). This is the so-called *Blockburger* test. " 'When each statutory offense has an element different from the other, the *Blockburger* test raises no presumption that the two statutes involve the same offense.' " *Id.* at 531, 553 S.E.2d at 109 (citation omitted). "The fact that each crime requires proof of an element which the other does not demonstrates the intent of the General Assembly to allow multiple punishments to be imposed for the separate crimes." *Id.* Thus, in *Haynesworth*, we rejected the defendant's argument that he could not be convicted and sentenced for both first degree murder and assault on a law enforcement officer stemming from the same incident because each offense required proof of an element which the other did not. *Id.*

In this case, defendant's constitutional rights have not been abridged because the offenses of financial transaction card theft and robbery with a dangerous weapon each require proof of an essential element which the other does not. Financial transaction card theft requires proof that the perpetrator obtain the financial card with the intent to then use the card. N.C. Gen. Stat. § 14-113.9(a)(1) (2001). This is not an element of robbery with a dangerous weapon. Robbery with a dangerous weapon requires that the perpetrator possess a dan-

gerous weapon during the commission of the robbery. N.C. Gen. Stat. § 14-87(a) (2001). This is not an element of financial transaction card theft. Accordingly, defendant's rights have not been violated and this argument is without merit.

**[4]** Fourth, defendant argues that he is entitled to a new trial because the trial court unconstitutionally denied his request to represent himself. On two occasions prior to trial, defendant signed waiver of counsel forms indicting a desire to represent himself. However, subsequent to those waivers, during a pretrial discovery meeting on 25 October 2000, defendant refused to sign a waiver of his right to counsel when he learned of the potential punishment he faced. Thereafter, on 13 December 2000, the trial court entered an order assigning a public defender to represent defendant. On 22 December 2000, defendant filed a hand-written motion to suppress evidence and dismiss the charges. On 3 January 2001, defendant addressed a letter to both the trial court and his assigned counsel expressing his dissatisfaction with counsel's handling of the matter. Defendant also addressed a letter to his attorney directing him to follow his wishes, and stating that if he refused, defendant wished to represent himself.

On 26 January 2001, the trial court conducted a hearing regarding defendant's representation. The trial court asked defendant if he wanted to represent himself when his trial commenced. Defendant responded that what he really wanted was to have his motion to suppress and dismiss heard immediately. When asked a second time if he wanted to represent himself during trial, defendant asked the trial court whether, if he represented himself, he would be allowed to proceed that day with his motions. Defendant expressed confusion regarding the proceedings, particularly with respect to the date of trial, and upon the trial court's attempt to explain, defendant opined that "[t]his is crap." Defendant also indicated that his counsel was there to "dismiss himself." The trial court retained defendant's counsel, who then conducted defendant's trial when it commenced on 6 February 2001.

Although a defendant may request to proceed *pro se*, before a trial court may allow a defendant to waive representation, it must ensure that constitutional and statutory standards are met. *State v. Fulp*, 355 N.C. 171, 174-75, 558 S.E.2d 156, 159 (2002). First, the defendant's waiver must be expressed clearly and unequivocally. *Id.* at 175, 558 S.E.2d at 159. Second, the trial court must ensure that the defendant's waiver is knowing, voluntary, and intelligent. *Id.* Our

Supreme Court has held that the trial court's inquiry into these matters is sufficient where the trial court complies with the guidelines set forth in N.C. Gen. Stat. § 15A-1242 (2001). *Id.* That statute provides:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242.

In the present case, it is evident from the transcript that defendant's main focus was having his motion to suppress and dismiss heard immediately, and that he failed to understand that the issue of his representation had no bearing on whether his motions would proceed that day. Defendant appeared willing to waive counsel if such action would assist him in having his motions heard immediately, even after the trial court explained that defendant's motions could not proceed that day. Although defendant argues that he clearly requested several times to proceed on his own, the trial court was under an obligation to ensure, before granting such a request, that all constitutional and statutory requirements were met. Our review of the transcript leads us to conclude that the trial court did not err in determining that the statutory requirements for a clear, unequivocal, knowing, voluntary, and intelligent waiver were not sufficiently established. This argument is overruled.

[5] Finally, defendant maintains that he is entitled to a new trial because the court unconstitutionally removed him from the courtroom during closing arguments. The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution provides a defendant with the right to be present during each stage of his trial. *State v. Miller*, 146 N.C. App. 494, 499-500, 553 S.E.2d 410, 414 (2001). However, in a non-capital case, a defendant may waive the right to be

present through his behavior. *Id.* at 500, 553 S.E.2d at 414. N.C. Gen. Stat. § 15A-1032 (2001) provides:

> (a) A trial judge, after warning a defendant whose conduct is disrupting his trial, may order the defendant removed from the trial if he continues conduct which is so disruptive that the trial cannot proceed in an orderly manner. When practicable, the judge's warning and order for removal must be issued out of the presence of the jury.
>
> (b) If the judge orders a defendant removed from the courtroom, he must:
>
> (1) Enter in the record the reasons for his action; and
>
> (2) Instruct the jurors that the removal is not to be considered in weighing evidence or determining the issue of guilt.

N.C. Gen. Stat. § 15A-1032.

Here, following the close of all evidence, and outside the presence of the jury, defendant's counsel informed the trial court that defendant wished to give his own closing argument. The trial court stated it would not allow this, whereupon defendant said to the court, "[n]o, sir." The trial court instructed defendant to stand, and defendant, who remained seated, replied again, "[n]o, sir." Defendant then stated to the court, "[y]esterday . . . was a total jerk." The trial court instructed defendant to be quiet and began to explain that the courtroom would be conducted as the court determined. Defendant then interrupted the court, complaining about a previous evidentiary ruling. The trial court instructed that defendant be removed, and entered findings in the record that by his conduct, defendant waived his right to be present. When the jury returned, the trial court instructed that it was not to consider defendant's absence in weighing the evidence and coming to a verdict. The trial court invited defendant to return to the courtroom following closing arguments, but defendant refused.

We hold that the trial court did not err in finding that defendant waived his right to be present and in removing him from the courtroom in accordance with N.C. Gen. Stat. § 15A-1032. Defendant argues that the trial court failed to comply with the statute in that it failed to warn defendant prior to ordering his removal. The State

**STATE v. REID**

[151 N.C. App. 379 (2002)]

maintains that the trial court warned defendant when it instructed him to be quiet and began to explain that the trial would be conducted as the court determined, only to be interrupted by defendant's complaints about a prior ruling.

In any event, the right to be present at all critical stages of a trial is subject to a harmless error analysis. *Miller*, 146 N.C. App. at 502, 553 S.E.2d at 415. Defendant is only entitled to a new trial where he can establish the usefulness of his presence during trial and that absent the trial court's error, the result of the trial would have been different. *Id.* In *Miller*, we held that the court's failure to comply with N.C. Gen. Stat. § 15A-1032(b)(2) by instructing the jury that it was not to consider the defendant's absence did not warrant a new trial. *Id.* In so holding, we noted that defendant had the opportunity to keep informed of the proceedings through his attorney; that defendant was present during the admission of all evidence and confronted all witnesses; that defendant failed to show the usefulness of his presence during that portion of the trial during which he was absent; and that defendant failed to show that absent any error, the result of his trial would have been different. *Id.* at 501, 553 S.E.2d at 415.

Likewise, in this case, defendant has not established that his removal from the courtroom, if error, entitles him to a new trial. Defendant was present during the presentation of all evidence and was able to confront all witnesses; defendant failed to show how his presence in the courtroom would have been useful during closing arguments; the trial court invited defendant to return to the courtroom following closing arguments, but he refused; and, in light of the evidence presented, defendant failed to show that any error in his removal during closing arguments affected the outcome of his trial.

Defendant received a fair trial.

No error.

Judges WYNN and THOMAS concur.