STATE OF NORTH CAROLINA v. ANTWANE ANDRE WALKER

No. COA02-335

(Filed 17 December 2002)

**1. Firearms and Other Weapons— possession of handgun by convicted felon—constructive possession—acting in concert**

The trial court did not err by failing to dismiss the charge of possession of a handgun by a convicted felon and by instructing the jury on constructive possession even though defendant contends the evidence is insufficient to show that he possessed a handgun during the commission of a burglary and armed robbery, because: (1) defendant acted in concert with three other men to commit burglary and armed robbery; and (2) possession of the gun found in the car that fits the description of one of the guns

STATE v. WALKER

[154 N.C. App. 645 (2002)]

used by a coparticipant is imputed to defendant through his acting in concert.

**2. Burglary and Unlawful Breaking or Entering; Robbery— first-degree burglary—armed robbery—acting in concert— motion to dismiss—sufficiency of evidence**

The trial court did not err by failing to dismiss the charges of first-degree burglary and armed robbery and by instructing the jury on acting in concert in relation to these offenses even though defendant contends he was merely present at the crime scene and there was no evidence that defendant knew that any of the codefendants were armed, because: (1) there was sufficient evidence that defendant acted in concert with three other men to commit these crimes; and (2) possession of the gun found in the car that fits the description of one of the guns used by a coparticipant is imputed to defendant through his acting in concert.

**3. Burglary and Unlawful Breaking or Entering; Robbery— first-degree burglary—armed robbery—failure to instruct on lesser-included offenses**

The trial court did not err by refusing to instruct the jury on the lesser-included offenses of armed robbery and first-degree burglary, because: (1) the State presented ample evidence at trial of all seven elements of armed robbery so that a jury could find that defendant had knowledge that his accomplices had a gun; and (2) the State presented sufficient evidence to establish all the elements of first-degree burglary including that the dwelling was occupied.

**4. Joinder— offenses—motion to sever—possession of a handgun by a convicted felon—first-degree burglary— armed robbery**

The trial court did not commit plain error by failing to sever the possession of a handgun by a convicted felon offense from the first-degree burglary and armed robbery offenses and in admitting details of defendant's prior felony, because: (1) defendant has failed to show that the jury may have reached a different result or that the trial court not severing the trials ex mero motu was so fundamental an error as to deny him a fair trial; and (2) defendant cannot show that by failing to object to the joinder that his counsel was so deficient that it prejudiced his defense.

**5. Sentencing— record level—miscalculation harmless error**

Although the trial court erred in a robbery with a firearm, first-degree burglary, and possession of a firearm by a felon case by determining that defendant had ten prior record level points when the correct number is nine, the miscalculation was harmless error because defendant remains a level IV offender which requires nine to fourteen points.

Appeal by defendant from judgment entered 12 September 2001 by Judge Benjamin G. Alford in New Hanover County Superior Court. Heard in the Court of Appeals 31 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General W. Wallace Finlator, Jr., for the State.*

*Jeffrey Evan Noecker, for defendant-appellant.*

CAMPBELL, Judge.

Defendant, Antwane Andre Walker ("Antwane"), appeals from a judgment entered 12 September 2001 convicting him of robbery with a firearm, first degree burglary and possession of a firearm by a felon. On appeal, defendant argues five assignments of error by the lower court: I. The trial court erred by failing to dismiss the charge of possession of a handgun by a convicted felon and in instructing the jury on constructive possession based on lack of sufficient evidence; II. The trial court erred by failing to dismiss the charges of first degree burglary and armed robbery and by instructing the jury on acting in concert in relation to these offenses based on lack of sufficient evidence; III. The trial court erred by refusing to instruct the jury as to the lesser included offenses of armed robbery and first degree burglary; IV. The trial court committed plain error by failing to sever the possession of a handgun case from defendant's other cases and in admitting details of defendant's prior felony; and V. The trial court committed plain error by determining that defendant had ten prior record level points.

The relevant facts to this appeal are as follows: On 9 May 2000, Sybreina Jones ("Ms. Jones") and her three sons, Antonio, 13, Ricardo, 9, and Christian, 5, were all inside their Wilmington home when they heard a loud noise. Ms. Jones walked out of her room and saw three black men approaching her. All three men had guns and one of them asked, "Where's the money? Where's the jewelry? Where's the drugs?" The men rummaged through the house, overturning furniture

and looking through cabinets. Only three men were in the room where they told Ms. Jones and her boys to get down on the floor and stay. Ms. Jones testified, however, that she heard a great deal of noise in the back of the house, through which someone had rummaged. She testified that Ricardo told her, "Mommy, there's someone else in the house. . . . Mommy, it's Antwane." Ricardo told his mother that he recognized defendant's white Reeboks and baggy jeans. Ricardo said Antwane had "a pillowcase over his face." Defendant is Ms. Jones' nephew and the boys' cousin.

Captain David Smithey ("Captain Smithey"), of the New Hanover County Sheriff's Office, testified that when he arrived home from an outing the evening of 9 May 2000, he saw an unknown car in front of his house. He asked a neighbor about the car, but the neighbor knew nothing. While Captain Smithey was walking to ask a second neighbor, he saw a black male walk hurriedly towards the car and enter the car. Then three more black males did the same. Captain Smithey took down the license plate number on the car and called it in to 911. Detective Kevin Hargrove ("Detective Hargrove"), of the City of Wilmington Police Department, heard the call over his police radio regarding a suspicious vehicle. Detective Hargrove located the vehicle, a burgundy Ford Taurus, "occupied by four males . . . [with] the same tag that [he] heard over the radio." Detective Hargrove followed the car to an apartment complex and called for backup. Detective Hargrove observed as all four men entered an apartment. One of the men exited the apartment and left the area. Detective Hargrove looked in the Taurus and found a loaded "Cobray 9mm Mac 11 handgun." Captain Smithey and other backup arrived on the scene and went to the apartment door, where Diane Flemming allowed them to enter the apartment.

The officers found two men downstairs and defendant upstairs wearing baggy blue jeans and white Reeboks. The keys to the Ford Taurus were in a room across the hall from where defendant was sitting.

Detective Hargrove arrested the three men and took them to the Sheriff's Department, where he found a woman's Larex watch in one of the co-defendant's pockets. Detective Hargrove did not know about the burglary and robbery at the time he made the arrests. When he learned of the break-in at Ms. Jones' house, he returned a few days later to the apartment where he made the arrests, the Flemming residence, and recovered two handguns from upstairs that matched the

**STATE v. WALKER**

[154 N.C. App. 645 (2002)]

description given by Ms. Jones, Antonio, and Ricardo of the guns used in the burglary.

Diane Flemming, who was babysitting her daughter's three children on 9 May 2000, testified that between 10:30 and 11:00 p.m., "[f]our young men came [into the residence] . . . [and] they were acting kind of nervous." Defendant was one of the men. About ten minutes later the police knocked on the door and asked to search the house.

We will consider defendant's five assignments of error in turn.

I. Failing to dismiss the charge of possession of a handgun by a convicted felon and in instructing the jury on constructive possession.

"In ruling upon a motion to dismiss, the trial court must determine if the State has presented substantial evidence of each essential element of the offense." *State v. Reid*, 151 N.C. App. 379, 565 S.E.2d 747 (2002) (citation omitted). "Whether the evidence presented is substantial is a question of law for the court." *State v. Siriguanico*, 151 N.C. App. 107, 564 S.E.2d 301 (2002) (citing *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956)). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002), *cert. denied*, —— U.S. ——, 123 S. Ct. 488, —— L. Ed. 2d —— (2002) (citing *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995)). When considering a criminal defendant's motion to dismiss, the trial court must view all of the evidence presented "in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998) (citation omitted). The trial court correctly denies a motion to dismiss "[if] there is substantial evidence of every element of the offense charged, or any lesser offense, and of defendant being the perpetrator of the crime." *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994) (citation omitted).

[1] Defendant moved to dismiss the charge of possession of a handgun by a convicted felon at the close of the State's evidence and at the close of all the evidence. Defendant does not challenge the evidence that establishes him being a convicted felon. Defendant's contention is that there is insufficient evidence to show that he possessed a handgun during the commission of the burglary and armed robbery of Ms. Jones. The handgun which defendant is charged with possessing is the 9 millimeter Mac 11 found by Detective Hargrove in the back-

seat of the Taurus. Defendant argues that no evidence links him to having constructive possession of this handgun. We disagree. Our state Supreme Court has recently reaffirmed the doctrine of acting in concert as:

> [I]f 'two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.'

*State v. Mann*, 355 N.C. 294, 560 S.E.2d 776, 784 (2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 495, —— L. Ed. 2d —— (2002) (quoting *State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997), *cert. denied*, 522 U.S. 876, 118 S. Ct. 196, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 118 S. Ct. 1309, 140 L. Ed. 2d 473 (1998) (citations omitted)). Defendant concedes that there is substantial evidence that he was present at the scene of the burglary and robbery. Defendant contends, however, that the evidence is insufficient to connect him to a common plan or scheme to break into Ms. Jones' house and to commit armed robbery of the occupants. Defendant's argument is without merit. To find that the trial court erred in failing to grant defendant's motion to dismiss based on insufficient evidence, this Court would have to find that defendant's presence at Ms. Jones' house at the time of the burglary and armed robbery was coincidental to and ignorant of the co-defendants' presence. We find that defendant acted in concert with the other three men to commit burglary and armed robbery. Therefore, possession of the gun found in the Taurus that fits the description of one of the guns used by a co-defendant is imputed to defendant through his acting in concert to commit burglary and armed robbery. Accordingly, the trial court did not err, as defendant further argues, in instructing the jury on constructive possession. We dismiss this assignment of error.

II. Failing to dismiss the charges of first degree burglary and armed robbery and by instructing the jury on acting in concert.

[2] Defendant argues that there is insufficient evidence to convict him of first degree burglary and armed robbery because he was merely present at the crime scene and there is no evidence that defendant knew that any of the co-defendants were armed. Per the discussion above regarding acting in concert, we find this argument to be without merit.

### III. Refusing to instruct the jury as to the lesser included offenses of armed robbery and first degree burglary.

**[3]** Defendant argues that a trial court must instruct a jury as to the lesser included offenses of a charge against a defendant if the State fails to produce strong evidence of one or more of the elements of the offense charged. While this is true, we find it an inapplicable argument to this case. The State presented ample evidence at trial of all seven elements of armed robbery, such that a jury could find that defendant had knowledge that his accomplices had guns. *See* N.C. Gen. Stat. § 14-87 (2001). Defendant further raises issue with the requisite element of armed robbery that the life of the victim be threatened or endangered. Defendant contends that no threats of harm were ever communicated to Ms. Jones or her children. Antonio testified that his brother, Ricardo, "tried to run and the man grabbed him and put the gun to his head. . . . And he told him to be quiet and put a hand over his mouth." Antonio said that he "screamed and told [the man] to get off [his] brother." Then Antonio testified, another "little short guy came in, and he pushed me on the ground . . . and put my hands behind my back and put the gun on my back." Ricardo testified, "I tried to run, and then [the man] grabbed me and put me under his leg and put the gun to my head." This is sufficient evidence to satisfy the requisite element of armed robbery that the life of the victim be threatened.

The State also presented sufficient evidence to establish all the elements of first degree burglary. *See* N.C. Gen. Stat. § 14-51 (2001). Defendant contends that the trial court should have instructed the jury on second degree burglary because there was insufficient evidence of an intent on defendant's part to commit armed robbery at the time of the breaking and entry. Having established that defendant was acting in concert with the co-defendants, he is guilty of the principal crime committed. Second degree burglary requires that the dwelling place be unoccupied at the time of the crime. As the house was occupied by four people, there was sufficient evidence of the elements of first degree burglary. This assignment of error is dismissed.

### IV. Failing to sever the possession of a handgun case from defendant's other cases and admitting details of defendant's prior felony.

**[4]** Defendant argues that the trial court committed plain error by failing to sever the trial for the possession of a handgun by a convicted felon offense from the burglary and armed robbery offenses. We disagree. Defendant, as he concedes, did not object to the trial

STATE v. WALKER

[154 N.C. App. 645 (2002)]

court's consolidation of the three charges and therefore, we can only consider this argument under a plain error standard. "Plain error is 'fundamental error' amounting to a miscarriage of justice or having a substantial and prejudicial impact on the jury verdict." *State v. Bartlett, Sr.*, 153 N.C. App. 680, —— S.E.2d —— (2002) (citing *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999), *cert. denied*, 528 U.S. 1084, 120 S. Ct. 808, 145 L. Ed. 2d 681 (2000)). "Under this standard, defendant is entitled to relief if he can show " '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. O'Hanlan*, 153 N.C. App. 546, —— S.E.2d —— (2002) (citation omitted). Defendant has failed to show that the jury may have reached a different result or that the trial court not severing the trials *ex mero motu* was so fundamental an error as to deny him a fair trial.

Defendant argues, in the alternative to the trial court committing plain error by not severing the trials *sua sponte*, that he received ineffective assistance of counsel. We find that defendant cannot show that by failing to object to the joinder that his counsel was so deficient that it prejudiced his defense.

V. Determining that defendant had ten prior record level points.

**[5]** Defendant argues that the State mistakenly counted a prior class 2 misdemeanor as a point when only class A1 and 1 non-traffic misdemeanors should count as points. In turn, defendant's sentence was decided according to him having ten points instead of nine. The State agrees that it miscalculated defendant's prior points and the correct number is nine. The miscalculation, however, was harmless because defendant remains a level IV offender, which requires nine to fourteen points. Since defendant still has nine points after correcting the State's error and his sentence would remain the same, we dismiss this assignment of error.

No error.

Judges WALKER and McCULLOUGH concur.